***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the evidence received by the Commission in response to the November 15, 2001, Order referenced above. The appealing party has shown good grounds to reconsider the evidence, the Commission has received further evidence from the appellee, and having reviewed the competent evidence of record, the Full Commission hereby modifies and affirms the Opinion and Award of the deputy commissioner.
 ***********
On November 8, 2001, after oral argument before the Full Commission and while the Order of the Commission compelling the approval of the myoelectric arm was circulating among the Commissioners for signature, defendants' counsel wrote a letter dated November 8, 2001, copied to the Commission, expressing that defendants were willing to provide the myoelectric arm and would commit to responsibility for all cost of repair and replacement for one year after plaintiff's fitting. This letter was filed with the Industrial Commission on November 15, 2001, after the Commission's Order was filed. In response to defendants' November 8, 2001, letter, plaintiff filed a Motion to Strike. Plaintiff's motion is hereby ALLOWED.
 **********
Based on the Pre-Trial Agreement filed by the parties at the deputy commissioner hearing, the parties have entered into the following
 STIPULATIONS
1. Both plaintiff and defendants are subject to the Act.
2. Plaintiff was an employee of defendant-employer on May 7, 1992, when she suffered an injury by accident compensable under the Act.
3. Plaintiff's average weekly wage for the purposes of this action is $382.62.
 ***********
Based upon the stipulated record in this case and the competent evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was injured by accident on May 7, 1992, within the course and scope of her employment. Her average weekly wage was then $382.62. Defendants accepted liability.
2. Plaintiff was out of work for 121 days, and thereafter returned to work for the same employer in a capacity different from that in which she was employed at the time of injury. She remains employed with this same employer.
3. Plaintiff suffered traumatic amputation at the left forearm. The deputy commissioner found that level of the amputation shown on the reverse of the Form 25-R supplied by Dr. Campbell, including the left hand and the distal two-thirds of the left forearm, is consistent with the plaintiff's physical appearance. The Full Commission has no information to cause it to question the deputy's finding as to the condition of plaintiff's arm, and accepts this finding.
4. Following her admission through the emergency room plaintiff was treated by Donald A. Campbell, M.D., orthopedic surgeon of Catawba County. After appropriate posttraumatic surgical care, Dr. Campbell prescribed a "hook" prosthesis as a temporary prosthesis, to be used for training and rehabilitation purposes until plaintiff could be fitted with another prosthesis that he described as a myoelectric hand (or arm). The hook was thereafter to be used as a backup to the myoelectric hand. Dr. Campbell indicated that plaintiff had not reached the end of the healing period and that, at the end of her healing period, she should be fitted with the myoelectric hand because it would allow her to function more closely to normal.
5. Dr. Campbell has indicated that plaintiff is an excellent candidate for a myoelectric hand. He described the myoelectric hand as more sensitive and more easily manipulated than is the hook, giving plaintiff the ability to use her left arm in a greater range of positions and for a greater range of applications.
6. The prescription for the myoelectric arm was made by Dr. Campbell in 1992. In particular, Dr. Campbell wrote a letter to defendant-carrier on October 6, 1992, indicating that the best course of treatment was to fit plaintiff with a myoelectric prosthesis, and that the hook was to be used as a backup to the myoelectric prosthesis. Defendants denied the request for the myoelectric arm.
7. There is no medical evidence contradicting evidence that plaintiff is a good candidate for myoelectric prosthesis and that the myoelectric arm is reasonably and medically necessary. Defendants have suggested that plaintiff is not using her hook and has adapted to life without an artificial arm.
8. Plaintiff testified that she has difficulty using the hook, that the hook is suitable only for a limited range of tasks, and that she can use it to grasp objects that are in front of her, at approximately waist height, and located on the right side of her body. She testified that she has been unsuccessful in using the hook in her household tasks. She does not use the hook on her job.
9. Around people who know her, such as other employees, plaintiff is comfortable using her stump to manipulate objects, to the extent possible, but in public she tends to hide her left arm, whether with or without the prosthetic hook, because of the reaction that she receives or perceives from the public.
10. Plaintiff was provided a glove to cover the hook in order to render the hook more cosmetically acceptable, although less functional. Plaintiff is of African-American descent and has a medium brown complexion. She testified that the covering for the hook was the same color as the skin of her attorney, who is Caucasian. Because of the difference in color between the plaintiff's skin and the color of the glove, the use of the glove did not alleviate the social stigma that plaintiff reasonably perceived.
11. Plaintiff has attended Duke University Medical Center for an evaluation as to the appropriateness of a myoelectric prosthesis. She was fitted for a short trial with the myoelectric prosthesis and found that she could manipulate the myoelectric hand (or arm) with reasonable facility, could use it comfortably, and believed she could put it to more extensive use at work and at home than she could the hook.
12. The hook frightens plaintiff's daughter and remains in a drawer in plaintiff's home.
13. The medical evidence has indicated the reasonable medical necessity of a myoelectric prosthesis since 1992, and the evidence has not changed in this regard since the plaintiff first filed her hearing request on June 13, 1994. Defendants were aware of the diagnosis and recommendations of Dr. Campbell, of plaintiff's request that these recommendations be followed, and of plaintiff's request that the Commission enter an order to require defendants to provide the arm. Dr. Campbell's deposition was taken on August 23, 1995, almost five years before the deputy commissioner hearing. At the hearing before the deputy commissioner, defendants requested a second opinion concerning the medical necessity for the myoelectric arm, and the deputy commissioner denied this request as manifestly untimely. Defendants abandoned this issue on appeal to the Full Commission, and the deputy commissioner's denial of the independent examination stands.
14. A myoelectric hand would allow plaintiff to reach a higher level of function in the use of her injured left arm because it would, among other benefits, increase the number of tasks which she is able to perform with the arm, increase her speed and accuracy in performing many tasks, and allow her to use a prosthesis without perceiving negative social feedback. These factors would be reasonably likely to result in relief to the plaintiff and a lessening of her disability.
15. The benefits of a myoelectric hand would be in addition to and complimentary to the benefits of using the hook prosthesis, in that different upper limb prostheses are analogous to different tools which are adapted to different tasks, and the provision of a myoelectric hand would enable plaintiff to reach a higher level of independence and function by adding significantly to the number of tasks and situations in which she can beneficially use her injured left arm.
16. At the hearing before the Full Commission, defendants abandoned their position that plaintiff was not entitled to the myoelectric arm. The issue remaining in dispute is defendant's obligation to provide future replacements. Plaintiff states that she wants the myoelectric arm but is reluctant to accept it without the assurance that she will be able to use it in the future. In other words, plaintiff is concerned that she will not be able to afford the required replacement parts, maintenance, and any necessary replacement. Plaintiff has presented evidence to suggest that the myoelectric arm, like other prosthetic devices, has an anticipated five-year life (replacement) cycle, that the arm will require four gloves per year at the cost of $788.00 per glove ($3,152.00 per annum) and an average of $894.60 per year[1] for maintenance and repair costs, in addition to the estimated $29,822.00 payment for the arm and related equipment. The evidence is that the total anticipated expense for the myoelectric arm for the five year life cycle is $45,847.00, and that plaintiff has approximately ten cycles anticipated in her lifetime, or an undiscounted total of $458,470.00 over her lifetime. Defendants are willing to provide the initial myoelectric arm but take the position that they are not responsible for the maintenance, repair and replacement of the arm, pursuant to G.S. § 97-2(19) applicable to this claim. Thus, the important issue in this case is not the $29,822.00 initial cost of the myoelectric arm, but the anticipated $428,648.00 in additional expense over plaintiff's lifetime.[2]
17. There is a substantial risk of necessary future medical care for plaintiff for her compensable injury.
18. The deputy commissioner concluded that plaintiff was entitled to attorney's fees and expenses pursuant to G.S. § 97-88.1 based on a finding that defendants defended the claim without reasonable ground. Defendants contend that their defense was not unreasonable for at least the following reasons: (1) although perhaps medically advisable, plaintiff has demonstrated that the myoelectric arm is not medically necessary for her, based on failure to wear and use the prosthetic hook that has been provided to her and based on her continued employment without use of any prosthetic device; and (2) changes in Section 97-2(19) of the Act made by the legislature subsequent to plaintiff's injury, as well as a Full Commission opinion in I.C. No. 353780, Bardel v.Libbey-Owens-Ford Company, where, despite finding that plaintiff will need a functional prosthetic arm including future repair and replacement for the rest of his life, the Commission declined to rule on the issue of whether the repair and replacement was compensable under the applicable Act. More specifically, the Full Commission in Bardel stated:
 "The question of whether N.C. Gen. Stat. § 97-2(19) (1991 version) applies to this claim and precludes an award of future replacement of artificial members need not be decided at this time as plaintiff has not reached the end of his healing period and has not been provided an "original" artificial member which is reasonably functional enough to lessen his disability arising from his compensable injury. N.C. Gen. Stat. § 97-25 and N.C. Gen. Stat. § 97-2(19)."
Defendants assert that litigation of the unanswered question in Bardel is reasonable, and thereby plaintiff is not entitled to fees and expenses pursuant to Section 97-88.1.
19. The deputy commissioner did not err in awarding attorney's fees to plaintiff's counsel pursuant to G.S. § 97-88.1, because the defense of plaintiff's claim for a myoelectric arm was unreasonable as it related to defendants' obligation to provide the myoelectric arm as prescribed by Dr. Campbell. The deputy commissioner erred in awarding $1,183.37 in attorney's fees, as this amount was allegedly for plaintiff's related expenses, as stated in counsel's affidavit before the deputy commissioner. The Full Commission has reviewed the time statements provided by plaintiff's counsel and has determined, in its discretion, that the sum of $2,000.00 is an appropriate sanction under G.S. §97-88.1 for defendants' denial of plaintiff's request of a myolectric prosthesis at the hearing before the deputy commissioner. The Commission finds that the time entries provided by plaintiff are not limited to prosecuting the recovery of the myoelectric arm but are for other activity over the course of plaintiff's claim.
20. Having reviewed the entire record in this action, the Full Commission finds that defendants' appeal to the Full Commission is not groundless and that defendants have reasonable ground for bringing the appeal to the Full Commission on the issue raised by application of G.S. § 97-2(19), as amended effective July 5, 1994.
21. Plaintiff has also requested fees pursuant to G.S. § 97-88 and has submitted time and expenses for the handling of plaintiff's claim to the date of the hearing before the Full Commission. The Full Commission finds that plaintiff's counsel has provided a valuable service to plaintiff and that one intent of Section 97-88 is to promote representation of employees in claims where there is no ability to recover a fee, such as in a medical issue claim. Under Section 97-88, the Commission is empowered to award fees and expenses for the appeal to the Full Commission. The Full Commission, in its discretion, finds that plaintiff is entitled to recover, as costs of the proceeding before the Full Commission, $1,625.86 for reasonable attorney's fees ($1,500.00) and expenses ($125.86) incurred for this proceeding.
22. Plaintiff filed her Form 33 to join the issue of whether she was entitled to the myoelectric arm on June 13, 1994.
23. Plaintiff has not received the myoelectric arm, as of the date of the hearing before the Full Commission, and thereby has not reached the maximum medical improvement which she would reach after being fitted with the myoelectric arm and adapting to its use.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to continuing medical treatment for her compensable injury. G.S. § 97-25. Plaintiff's injury was before the effective date of § 97-25.1, and there is a substantial risk that she will need future treatment; therefore, the two-year limitation of §97-25.1 is not applicable to this claim.
2. Plaintiff is entitled to receive a myoelectric arm as reasonable and necessary treatment. G.S. §§ 97-2(19); 97-25. The applicable provision of Section 97-2(19) in effect on the date of plaintiff's 1992 injury provides:
 "Medical Compensation. — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period." [emphasis added]
In 1994, this provision was amended to read:
 "Medical Compensation. — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances. [emphasis added]
There is no question that the original artificial myoelectric arm is compensable under either version of Section 97-2(19). Senate Bill 906 was ratified on July 5, 1994, and the effective date for the changes to Section 97-2(19) is July 5, 1994, for claims pending on or filed after July 5, 1994. Plaintiff's claim for the myoelectric arm was pending on July 5, 1994. Pursuant to the version of § 97-2(19) applicable to plaintiff's claim, defendants are required to pay for the replacement of the myoelectric arm "when reasonably necessitated by ordinary use or medical circumstances."
3. Defendants assert that the effective date provision of Senate Bill 906 is unconstitutional because it is an ex post facto change in the law. The Full Commission declines to rule upon this issue in this case.See, e.g., Utilities Commission v. Carolina Utility CustomersAssociation, Inc., 336 N.C. 657, 446 S.E.2d 332 (1994).
4. Plaintiff has no current right to recover a monetary sum for the repair or replacement of the myoelectric arm. G.S. § 97-2(19). The obligation of defendants to provide for the repair or replacement is conditioned on the "when reasonably necessitated by ordinary use or medical circumstances" language of the Act. Id. The issue of a particular repair or replacement will be addressed if and when it arises. Although plaintiff has presented evidence concerning the anticipated expense for the myoelectric arm, including the anticipated repair and replacement costs, plaintiff is not entitled to recover this expense at this time because the repair or replacement is not currently "reasonably necessary." Id. Further, consistent with the employer/carrier's right to direct medical attention contained in Section 97-25, defendants should be allowed to select a competent provider to provide maintenance, repair, and replacement at the most economical price, as long as the quality of the artificial member is not substantially affected. Defendants may not be responsible for repair or replacement that is necessitated by abnormal use or intentional abuse. Section 97-25 specifically limits the defendants' obligation for repair/replacement to "ordinary use." The Act does not require defendants to pay for repair/replacement that may arise from intentional destruction or abnormal use. In addition, any warranties on the equipment, parts, and supplies would extend to the benefit of the defendants and plaintiff would not be entitled to collect the cost of repair/replacement from the defendants and the warrantor. Finally, it would appear that should the myoelectric arm need to be replaced, the replacement shall be with a myoelectric arm of the "original" model provided to plaintiff, or a similar or like kind model should the original model no longer be available.
5. At the hearing before the deputy commissioner, defendants unreasonably contested plaintiff's right to a myoelectric arm, and plaintiff is entitled to reasonable attorney's fees in the amount of $2,000.00. G.S. § 97-88.1.
6. Plaintiff is entitled to recover costs to the employee, including reasonable attorneys fees, pursuant to Section 97-88, in the amount of $1,625.86. G.S. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. As previously ordered by the Commission, defendants shall approve the prescription for the myoelectric arm and assist with the arrangement for its placement with plaintiff in a prompt manner. Defendants shall provide the training and other medical treatment and counseling necessary to allow plaintiff to adapt to the use of the myoelectric arm, compensate plaintiff for reasonable time that she may be out of work for the placement and training of the myoelectric arm, and pay for the reasonable maintenance and repair of the myoelectric arm and for consumable supplies that plaintiff may reasonably require with the use of the artificial arm in accordance with Section 97-2(19) (as amended).
2. Defendants shall pay for the replacement of plaintiff's myoeloectric arm "when reasonably necessitated by ordinary use of medical circumstances."
3. Defendants are hereby ORDERED to pay directly to plaintiff's counsel the sum of $3,625.86 for costs and attorney's fees, and plaintiff's attorney shall not charge these fees and expenses to plaintiff.
4. Defendants shall pay the costs of this action.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
[1] The evidence was that maintenance and repair is included in the price of the arm for the first two years and that the average expense over years three through five would total $4,437.00 for an average of $894.60 for each year of the average five year life cycle.
[2] These figures are used for illustrative purposes only. Defendants are required to provide repair when "reasonably necessary." Plaintiff has no right to compel payment for potential prospective expenses. The actual cost may be higher or lower depending upon changes in medical equipment fees, plaintiff's use or non-use of the arm, the durability of the equipment/supplies, and other factors.